IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **KRIS KINSEY,** <br> Plaintiff, <br> v. <br> **STATE OF OHIO,** *et al.* <br> Defendants. | Case No. 2:17-cv-982 <br><br> Judge Graham <br><br> Magistrate Judge Vascura |

**OPINION AND ORDER**

This matter is before the Court for consideration of the Motion for Summary Judgment filed by Defendants County of Belmont ("Belmont County"), Sheriff David Lucas, and Jail Administrator Brent Carpenter (collectively, "Defendants"). (Def.'s Mot. Summ. J., ECF No. 32.) For the reasons set forth below, the Court **GRANTS** Defendants' Motion for Summary Judgment.

**I.    BACKGROUND**

    **A.    Factual Background**

Plaintiff Kris Kinsey was arrested by a City of Elyria Police Officer on August 19, 2017. (Am. Compl. ¶ 6, ECF No. 4 at 87.) He was arrested pursuant to an outstanding bench warrant issued by the Belmont County Court of Common Pleas. (Pl.'s Ex. B, ECF No. 4 at 106.) Mr. Kinsey was transported to the Lorain County Jail. (Kinsey Dep. 28:2–3, ECF No. 31-1 at 248.) The details of Mr. Kinsey's detention at the Lorain County Jail are outlined in *Kinsey v. Cnty. of Lorain*, No. 1:17 CV 2412, 2019 U.S. Dist. LEXIS 10871 (N.D. Ohio Jan. 23, 2019), which is

1

incorporated by reference. While detained at the Lorain County Jail, Mr. Kinsey was placed on suicide watch. *Id.* at *8–9.

Mr. Kinsey signed a Waiver in Lieu of Criminal Rule 4(E) Hearing. (Defs.' Ex. D, ECF No. 31-3 at 379.) By signing the waiver, Mr. Kinsey waived his right to consult an attorney before leaving Lorain County, his right to be taken to a court of jurisdiction for bail to be set, and agreed to be transported to Belmont County. (*Id.*) Mr. Kinsey testified that he understood what he signed. (Kinsey Dep. 48:18–24.) Mr. Kinsey was transported to the Belmont County Jail on August 21, 2017. *Kinsey*, 2019 U.S. Dist. LEXIS 10871, at *9.

Upon arriving at the Belmont County Jail, Mr. Kinsey spoke with Nurse Joanne Lucas ("Nurse Lucas") concerning his medical history. (J. Lucas Aff. ¶ 5, ECF No. 32-2 at 417.) Mr. Kinsey claims he "told the nurse that . . . he had dental surgery one week prior and . . . takes various prescribed medications," along with a nutrition supplement, Ensure, "because he was unable to eat solid foods." (Am. Compl. ¶ 11.) Nurse Lucas avers that "[a]t no point in time did Mr. Kinsey inform [her] that he was prescribed Ensure or needed Ensure." (J. Lucas Aff. ¶ 8.) Though Mr. Kinsey and Nurse Lucas disagree as to whether they discussed Mr. Kinsey's requirement for Ensure, they do agree that Mr. Kinsey relayed his recent dental surgery to Nurse Lucas, that Nurse Lucas observed the poor condition of his teeth, and Nurse Lucas thereafter annotated Mr. Kinsey's need for a soft diet. (Kinsey Dep. 56:3–57:1; J. Lucas Aff. ¶ 7; Defs.' Ex. E, ECF No. 31-4 at 380;

Defs.' Ex. I, ECF No. 31-6.) Because Lorain County considered Mr. Kinsey a suicide risk, Belmont County also placed him on suicide watch. (*Id.* at ¶ 15; J. Lucas Aff. ¶ 6.)

While confined to a solitary cell, Mr. Kinsey received a soft diet. Mr. Kinsey ate every meal he was offered with the exception of one lunch. (Kinsey Dep. 82:15–16.) He received two dinner trays on the day he did not eat lunch. (*Id.* at 83:19–20.)

Mr. Kinsey claims he received a copy of the bench warrant and offered to pay the $380.00 bail amount by credit card, but that Belmont County refused to accept any form of payment other than cash. (Am. Compl. ¶ 14.) Mr. Kinsey was not given access to an automated teller machine ("ATM"). (*Id.*) Mr. Kinsey alleges that Defendants did not investigate his ability to pay any fines or costs. (*Id.* at ¶ 72.)

Mr. Kinsey later appeared before a judge at 3:00 PM on August 24, 2017 and was released from the Belmont County jail later that same day. (*Id.* at 87:2–5; Am. Compl. ¶ 23.) Upon release, Mr. Kinsey signed a document certifying that he received all of his property from the Belmont County Jail. (Defs'. Ex. I, ECF No. 31-6 at 384.)

Sheriff Lucas and Jail Administrator Carpenter did not speak or interact with Mr. Kinsey either before or while he was detained at the Belmont County Jail, were not involved with either Mr. Kinsey's detention or his release from the Belmont County Jail, and no issues concerning Mr. Kinsey were brought to their attention during Mr. Kinsey's detention at the Belmont County Jail. (Carpenter Aff. ¶¶ 7–12, ECF No. 32-1 at 415; D. Lucas Aff. ¶¶ 5–11, ECF No. 32-3 at 414–15.) Mr. Kinsey agrees that he had no personal interactions with either Sheriff Lucas or Jail Administrator Carpenter during either his arrest or his confinement at the Belmont County Jail. (Kinsey Dep. 29:11–30:4, 89:13–90:3.)

B.   **Procedural Background**

In his amended complaint, Mr. Kinsey brings claims for 1) false arrest; 2) false imprisonment; 3) negligent failure to provide medical care; 4) intentional infliction of emotional distress ("IIED"); 5) negligent infliction of emotional distress ("NIED"), 6) violations of his First, Fourth, Sixth, Eighth, and Fourteenth Amendment rights under 42 U.S.C. § 1983, 7) violations of the Americans with Disabilities Act and Rehabilitation Act,[1] 9) abuse of process, and 10) malicious prosecution. (ECF No. 4.) Defendants move for summary judgment on all of Mr. Kinsey's claims. Defendants' motion is fully briefed and ripe for consideration.

## II.   LEGAL STANDARD

Under Federal Rule of Civil Procedure 56, summary judgment is proper if the evidentiary material in the record shows that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Courts consider the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor." *Quigley v. Tuong Vinh Thai*, 707 F.3d 675, 679 (6th Cir. 2013) (internal citation omitted) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986)). The critical question here is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986).

"The moving party has the initial burden of proving that no genuine issue of material fact exists, and the court must draw all reasonable inferences in the light most favorable to the nonmoving party." *Stansberry v. Air Wisconsin Airlines Corp.*, 651 F.3d 482, 486 (6th Cir. 2011)

---

[1] Mr. Kinsey's claims are ordered according to his amended complaint which goes from a seventh cause of action to a ninth cause of action. (ECF No. 4 at 101–02.)

4

(internal quotations omitted). "Once the moving party meets its initial burden, the nonmovant must 'designate specific facts showing that there is a genuine issue for trial.'" *Kimble v. Wasylyshyn,* No. 10–3110, 2011 WL 4469612, at *3 (6th Cir. Sept. 28, 2011) (quoting *Celotex Corp. v. Catrett,* 477 U.S. 317, 324 (1986)); *see also* Fed. R. Civ. P. 56(c) (requiring a party maintaining that a fact is genuinely disputed to "cit[e] to particular parts of materials in the record"). "The nonmovant must, however, do more than simply show that there is some metaphysical doubt as to the material facts. [T]here must be evidence upon which a reasonable jury could return a verdict in favor of the non-moving party to create a genuine dispute." *Lee v. Metro. Gov't of Nashville & Davidson Cnty.,* 432 F. App'x 435, 441 (6th Cir. 2011) (internal quotations and citations omitted). "When a motion for summary judgment is properly made and supported and the nonmoving party fails to respond with a showing sufficient to establish an essential element of its case, summary judgment is appropriate." *Stansberry*, 651 F.3d at 486 (citing *Celotex*, 477 U.S. at 322–23).

## III. DISCUSSION

In their Motion for Summary Judgment, Defendants Belmont County, Sheriff David Lucas, and Jail Administrator Brent Carpenter provide several grounds on which they believe summary judgment should be granted.

### A. Abandoned Claims

Defendants first claim that Mr. Kinsey fails to support many of his claims against all three Defendants in his response in opposition to their motion for summary judgment. Defendants likewise point out that Mr. Kinsey also fails to address his claims against Sheriff Lucas and Jail Administrator Carpenter in their individual capacities. Upon reading Mr. Kinsey's response in opposition (ECF No. 35), the Court agrees that Mr. Kinsey failed to respond to Defendants'

arguments concerning several of his claims.

The Sixth Circuit's position on a plaintiff's abandonment of a claim is well established. "[A] plaintiff is deemed to have abandoned a claim when a plaintiff fails to address it in response to a motion for summary judgment." *Brown v. VHS of Mich., Inc.,* 545 F. App'x 368, 372 (6th Cir. 2013) (citing *Hicks v. Concorde Career Coll.*, 449 F. App'x 484, 487 (6th Cir. 2011) (holding that a district court properly declines to consider the merits of a claim when a plaintiff fails to address it in a response to a motion for summary judgment); *Clark v. City of Dublin*, 178 F. App'x 522, 524-25 (6th Cir. 2006) (recognizing that the failure to respond properly to motion for summary judgment arguments constitutes abandonment of a claim)).

As Mr. Kinsey never addresses Defendants' arguments concerning Count One: false arrest; Count Two: false imprisonment; Count Three: negligent failure to provide medical care; Count Four: IIED; Count Five: NIED; Count Six: as it pertains to violations of his First Amendment right to free speech and expression, Fourth Amendment right against unreasonable seizures, and Sixth Amendment right to counsel; Count Seven: violations of the Americans with Disabilities Act and Rehabilitation Act; Count Nine: abuse of process; and Count Ten: malicious prosecution; and his claims against Sheriff Lucas and Jail Administrator Carpenter in their individual capacities, he is deemed to have abandoned those claims. Accordingly, Defendants are entitled to judgment as a matter of law on these claims.

The Court addresses Mr. Kinsey's remaining claims, which stem from alleged violations of his Eighth and Fourteenth Amendment rights.

### A. Claims Against Defendants Sheriff Lucas and Jail Administrator Carpenter

Mr. Kinsey claims that Defendants Belmont County, Sheriff Lucas, and Jail Administrator Carpenter violated his Eighth and Fourteenth Amendment rights to receive adequate medical treatment and his right not to be subject to excessive bail.

Defendants highlight that Mr. Kinsey's only remaining claims against Defendants Sheriff Lucas and Jail Administrator Carpenter are against them in their official capacities. Defendants point out that since Sheriff Lucas and Jail Administrator Carpenter are employees of Belmont County, the official capacity claims against them are actually against their employer, Belmont County. "While 'personal-capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law,' individuals sued in their official capacities stand in the shoes of the entity they represent." *Alkire v. Irving,* 330 F.3d 802, 810 (6th Cir. 2003) (quoting *Kentucky v. Graham*, 473 U.S. 159, 165 (1985)); *Matthews v. Jones,* 35 F.3d 1046, 1049 (6th Cir. 1994) ("A suit against an individual in his official capacity is the equivalent of a suit against the governmental entity."). "As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Graham*, 473 U.S. at 166. Therefore, the only remaining true defendant is Defendant Belmont County.

### B. Section 1983 Claims

Defendants further declare that Mr. Kinsey fails to allege valid § 1983 claims in his amended complaint. The Court agrees.

In *Monell v. Dep't of Soc. Servs.,* 436 U.S. 658, 694 (1978), the Supreme Court determined that "a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents." "Instead, it is when the execution of a government's policy or

custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Id.* As the Sixth Circuit explains, under *Monell,* "county liability is limited to situations in which the deprivation of constitutional rights results from an official policy or custom of the county." *Petty v. Cnty. of Franklin,* 478 F.3d 341, 347 (6th Cir. 2007).

To establish municipal liability, a plaintiff "must (1) identify the municipal policy or custom, (2) connect the policy to the municipality, and (3) show that his particular injury was incurred due to execution of that policy." *Alkire*, 330 F.3d at 815 (citing *Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir. 1993)). "There must be a 'direct causal link' between the policy and the alleged constitutional violation such that the County's deliberate conduct can be deemed the moving force behind the violation." *Graham ex rel. Estate of Graham v. County of Washtenaw,* 358 F.3d 377, 383 (6th Cir. 2004).

Defendants argue that Mr. Kinsey's response in opposition to their motion asserts *Monell* claims that were not pled in his amended complaint. An examination of Mr. Kinsey's amended complaint reveals that Defendants are correct in their assertion. Mr. Kinsey's amended complaint fails to allege that any Belmont County custom or official policy led to a violation of his constitutional rights.

"A plaintiff may not amend his complaint through arguments in his brief in opposition to a motion for summary judgment." *Shanahan v. City of Chicago*, 82 F.3d 776, 781 (7th Cir. 1996). *See also Guiffre v. Local Lodge No. 1124, United Steelworkers of Am.*, 940 F.2d 660 (Table), [published in full-text format at 1991 U.S. App. LEXIS 17698], 1991 WL 135576, at *5 (6th Cir. July 24, 1991) ("A party may not rely on wholly new allegations of wrongdoing to resist a motion

for summary judgment."). Thus, Mr. Kinsey is barred from asserting *Monell* claims against Defendants in his response in opposition to their motion for summary judgment.

As Mr. Kinsey's amended complaint fails to allege the existence of a Belmont County policy or custom that resulted in a violation of his constitutional rights, his § 1983 claims fail as a matter of law. His § 1983 claims against Defendants Belmont County, Sheriff Lucas, and Jail Administrator Carpenter for violations of his Eighth and Fourteenth Amendment rights are therefore dismissed.

### IV. CONCLUSION

For the reasons articulated above, the Court **GRANTS** Defendants' Motion for Summary Judgment (ECF No. 32). All of Plaintiff Kris Kinsey's claims against Defendants are **DISMISSED WITH PREJUDICE**. The Court hereby enters judgment in favor of Defendants.

**IT IS SO ORDERED.**

/s/ James L. Graham
JAMES L. GRAHAM
United States District Judge

DATE: March 5, 2020